IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| BAUTISTA CAYMAN ASSET COMPANY<br><br>Plaintiff<br><br>vs<br><br>NORTH BAY DEVELOPMENT, INC.; OESE HOLDING INC.; OMEGA ENGINEERING, LLC; RIDGESTONE, INC.; OSCAR IVAN RIVERA RIVERA, CRISTINA MARIA SOTO BENITEZ, and the community property partnership between them<br><br>Defendants | CIVIL 17-1203CCC |

**OPINION AND ORDER**

Before the Court is plaintiff Bautista Cayman Asset Company's *Motion for Summary Judgment and a Memorandum of Law in Support Thereof* (**d.e. 50**). As a response to Bautista's Summary Judgment, on April 23, 2019 defendants filed a motion in *Opposition to Plaintiff's Motion for Summary Judgment and Memorandum of Law* (d.e. 58), alongside an *Opposing Statement of Material Facts In Support of Opposition to Plaintiff's Motion for Summary Judgment.* (d.e. 59). In June 17, 2019 Bautista filed a *Reply to Opposition to Plaintiff's Motion for Summary Judgment and Memorandum of Law.* (d.e. 65). After consideration the Court hereby **GRANTS** in part and **DENIES** in part Bautista's Motion for Summary Judgment (**d.e. 50**).

**I.    PROCEDURAL BACKGROUND**

On February 9, 2017, plaintiff Bautista Cayman Asset Company ("*Bautista*") filed this diversity suit against defendants North Bay et al

CIVIL 17-1203CCC                            2

("*defendants*"). (d.e. 1). Due to defendants' default on their obligations, Bautista's *Complaint* requests defendants' immediate payment of all the obligations owed. *Id.* at 12. Additionally, in the event defendants fail to pay the debt, Bautista also requests the foreclosure of all the real and non-real property used as collateral to secure the debt. *Id.* at 13.

On February 28, 2019, Bautista filed a *Motion For Summary Judgment And A Memorandum Of Law In Support Thereof*, (**d.e. 50**), and a *Statement of Uncontested Material Facts In Support of Motion for Summary Judgment.* (d.e. 51). In response, defendants filed an *Opposition to Plaintiff's Motion for Summary Judgment.* (d.e. 58). In the opposition, each defendant alleged different disputed facts regarding their circumstances. All defendants concur that Bautista has not met its burden of proof as to three facts:

(1) The amount owed by defendants, since Bautista relied exclusively on a conclusory statement by Mr. Juan Crespo; according to defendants, "[a]t a minimum, Bautista must have produced itemized statements and/or business records showing the loan payment history, and the amount allegedly owed." (d.e. 58 at 5, 8-10).

(2) The amount of attorney's fees, as Bautista has not provided statements of business record showing the amount of attorney's fees; *Id.* at 5, 9-10.

(3) Mr. Oscar I. Rivera Rivera's ("*Mr. Oscar Rivera*") authority, or agency, to represent Ms. Cristina Soto Benítez ("*Ms. Cristina Soto*") in the agreements made. *Id.* at 6, 8-9.

In addition, defendants Ridgestone and North Bay allege that Bautista has not met its burden of proof as to the recordation of the Deed of the Mortgages in the Property Registry. *Id* at 6, 8. Finally, defendant Ridgestone alleges that Bautista failed to prove the recordation of the relevant financing statement in the Puerto Rico Department of State, which is required to perfect

CIVIL 17-1203CCC 3

its security interest over the non-real property used as additional collateral. *Id.* at 7.

On June 17, 2019, Bautista filed a *Reply To Opposition To Plaintiff's Motion For Summary Judgment And Memorandum Of Law.* (d.e. 65). Plaintiff attached two title studies regarding the status of the two real properties at the Property Registry and a Power of Attorney.  Id.

## II. UNCONTESTED FACTS

1. Plaintiff Bautista is an exempt, for-profit corporation, organized, incorporated, and existing pursuant to the laws of the Cayman Islands. (d.e. 51-1 at ¶ 2).

2. North Bay Development, Inc. ("North Bay") is a for-profit corporation organized under the laws of the Commonwealth of Puerto Rico, which principal place of business is located at 954 Ponce de Leon Ave., Suite 400, San Juan, Puerto Rico 00917. *See* Registry of Corporations and Entities of the State Department of the Commonwealth of Puerto Rico ("Registry of Corporations and Entities"), https://prcorpfiling.f1hst.com/CorpInfo/CorporationInfo.aspx?c=170247-111.

3. OESE Holding Inc. ("OESE") is a for-profit corporation organized under the laws of the Commonwealth of Puerto Rico, which principal place of business is located at 954 Ponce de Leon Ave., Suite 400, San Juan, Puerto Rico 00917. See, Registry of Corporations and Entities, https://prcorpfiling.f1hst.com/CorpInfo/CorporationInfo.aspx?c=164751-111.

4. Ridgestone, Inc. ("Ridgestone"), is a for-profit corporation organized under the laws of the Commonwealth of Puerto Rico, which principal place of business is located at 954 Ponce de Leon Ave., Suite 400, San Juan, Puerto Rico 00917. *See* Registry of Corporations and Entities, https://prcorpfiling.f1hst.com/CorpInfo/CorporationInfo.aspx?c=170115-111.

5. Omega Engineering, LLC ("Omega"), is a for-profit limited liability company organized and existing under the laws of the Commonwealth of Puerto Rico, which principal place of business is located at 954 Ponce de Leon Ave., Suite 400, San Juan, Puerto

CIVIL 17-1203CCC                          4

      Rico 00917. *See* (d.e. 25 at ¶ 7); *see also*, Registry of Corporations and Entities, https://prcorpfiling.f1hst.com/CorpInfo/CorporationInfo.aspx?c=1680-1531.

6. Mr. Oscar Iván Rivera Rivera is of legal age and resident of San Juan, Puerto Rico, and his last known address is 954 Ponce de Leon Ave., Suite 400, San Juan, Puerto Rico 00917. (d.e. 25 at ¶ 8).

7. Cristina María Soto Benítez is of legal age and resident of San Juan, Puerto Rico, and her last known address is 954 Ponce de Leon Ave., Suite 400, San Juan, Puerto Rico 00917. (d.e. 25 at ¶ 9).

8. On February 27, 2015, the Office of the Commissioner of Financial Institutions closed the operations of Doral Bank ("Doral") and named the Federal Deposit Insurance Corporation ("FDIC") as receiver. (d.e. 51-1 at ¶ 3).

9. On March 27, 2015, Bautista executed an agreement with the FDIC through which it acquired certain assets of Doral, including, among others, the credit relationships between Doral and the above-captioned defendants which are detailed below. (d.e. 51-1 at ¶ 4).

10. On February 27, 2007, Ridgestone executed a *Loan and Security Agreement* (the "Loan Agreement I") with Doral. (d.e.1-1).

11. Through the Loan Agreement I, Doral provided a term loan facility to Ridgestone in the principal amount not to exceed $1,800,000.00, authenticated by affidavit number 21,463 of notary public Arline V. Bauzá Figueroa. (d.e. 1-1).

12. The principal amount under the Loan Agreement I was evidenced by a promissory note (the "Promissory Note I") payable to the order of Doral, duly endorsed to Bautista, in the amount of $830,787.75, authenticated by affidavit number 21,461 of notary public Arline V. Bauzá Figueroa. (d.e. 1-2).

13. The Loan Agreement I was guaranteed by a mortgage note (the "Mortgage Note I") described as follows: Mortgage Note payable to the order of Doral, or to its order, in the principal amount of $1,800,000.00, due on demand, bearing an interest at the rate of fourteen percent (14%) *per annum*, executed by Ridgestone, and authenticated by affidavit number 21,460 of notary public Arline V. Bauzá Figueroa. Mortgage Note I was subsequently endorsed in favor of Bautista. (d.e. 1-3).

14. The Mortgage Note I was secured by Deed of Mortgage number 4 ("Mortgage Deed I") executed by and between Ridgestone and

CIVIL 17-1203CCC                         5

   Doral before notary public Arline V. Bauzá Figueroa constituted over Real Property 21,142. (d.e. 1-4.)

15. The legal description of Real Property 21,142 is as follows:

   Rústica: Parcela de terreno localizada en el Barrio Caimito de Río Piedras, término Municipal de San Juan, Puerto Rico, identificada en el Plano de Inscripción como "Los Árboles Court", con una cabida superficial de dieciséis mil setecientos ochenta y un metro cuadrado con ocho mil quinientos sesenta y cuatro diez milésimas de metro cuadrado (16,781.8564 m.c.), equivalentes a cuatro cuerdas con dos mil seiscientas noventa y ocho diezmilésimas de cuerda (4.2698 cdas.), en lindes: por el Norte, con los lotes cuatrocientos doce (412), cuatrocientos veintidós (422), cuatrocientos veintitrés (423) y área recreativa adicional de la Urbanización Los Árboles de Montehiedra; por el Sur, con el camino Los Bigios y Héctor Aranda; por el Este, con camino Los Bigios y Sucesión Rafael López y por el Oeste, con Héctor Arana y Área Verde "A" de la Urbanización Los Árboles de Montehiedra. (d.e. 1-4 at 2).

16. To further guarantee the Loan Agreement I, on February 27, 2007, Ridgestone, Mr. Oscar Rivera and Ms. Cristina Soto (Mr. Rivera collectively with Mrs. Soto, are the "Guarantors") executed a *Guaranty and Agreement* (the "Guaranty I") to jointly and severally guarantee to Doral the payment of all the obligations under Loan Agreement I. (d.e. 1-5).

17. Guaranty I was authenticated by affidavit number 21,464 of notary public Arline V. Bauzá Figueroa. (d.e. 1-5).

18. Also, on February 27, 2007, Doral, Ridgestone and the Guarantors executed an *Indemnity Agreement* (the "Indemnity Agreement I") in favor of Doral, authenticated by affidavit number 21,465 of notary public Arline V. Bauzá Figueroa. (d.e. 1-6).

19. On December 19, 2008, Ridgestone executed a *Modification to Loan Agreement* with Doral (the "Modified Loan Agreement I"), authenticated by affidavit number 1,401 of notary public Xana M. Connelly Pagán. (d.e. 1-8).

20. Pursuant to said Modified Loan Agreement I, among other things, the principal amount owed under the Loan Agreement I was reduced to $1,053,049.72 and the maturity date of Loan Agreement I extended to August 31, 2009. (d.e. 1-8, at 3).

21. On March 4, 2011, Ridgestone, Doral and the Guarantors executed a *Second Modification to Loan Agreement* (the "Modified Loan

CIVIL 17-1203CCC                    6

    Agreement II"), authenticated by affidavit number 15,089 of notary public Sergio A. Ramírez de Arellano. (d.e. 1-9).

22. Among other things, pursuant to the Modified Loan Agreement II the maturity date of Loan Agreement I was extended to December 31, 2013. (d.e. 1-9 at 1).

23. The modifications made to the Loan Agreement I through the Modified Loan Agreement II were evidenced by an *Allonge to Promissory Note* (the "Allonge I") issued by Ridgestone and authenticated by affidavit number 15,090 of notary public Sergio A. Ramírez de Arellano. (d.e. 1-2 at 2).

24. On September 18, 2007, North Bay executed a *Loan Agreement* (the "Loan Agreement II") with Doral. (d.e. 1-10).

25. Through said Loan Agreement II, Doral provided a term loan facility to North Bay in the principal amount of $13,180,000.00, authenticated by affidavit number 1,652 of notary public Ricardo O. Meléndez Saurí. (d.e. 1-10).

26. The principal amount under the Loan Agreement II was evidenced by a promissory note (the "Promissory Note II") in the amount of $13,180,000.00, authenticated by affidavit number 1,653 of notary public Ricardo O. Meléndez Saurí. Promissory Note II was subsequently endorsed in favor of Bautista. (d.e. 1-11; d.e. 1-12).

27. The Loan Agreement II was guaranteed by a mortgage note ("Mortgage Note II") described as follows: Mortgage Note payable to the order of Doral, or to its order, in the principal amount of $13,180,000.00, due on demand, bearing an interest equal to 200 hundred basis points over and above the rate of interest publicly announced from time to time by Citibank, N.A., as its prime or base rate in effect at its principal place office in New York City, executed by North Bay, and authenticated by affidavit number 1,654 of notary public Ricardo O. Meléndez Saurí. (d.e. 1-13).

28. The Mortgage Note II was subsequently endorsed in favor or Bautista. (d.e. 1-13).

29. The Mortgage Note II was secured by mortgage deed number 74 (the "Mortgage Deed II") executed on September 18, 2007 by and between North Bay and Doral before notary public Ricardo O. Meléndez Saurí constituted over Real Property 20,753. (d.e. 1-14).

30. The legal description of Real Property 20,753 is as follows:

    URBANA: Parcela radicada en el Barrio Santurce del término municipal de San Juan, con una cabida superficial de veintidós mil doscientos doce metros y

> nueve mil doscientos veintiocho diezmilésimas de otro (22,212.9228 m.c.) equivalentes a cinco cuerdas y seis mil quinientos dieciséis diezmilésimas de otra (5.6515 cdas.), en lindes: por el NORTE, con la Calle A; por el SUR, con la franja de seguridad de la Bahía de San Juan; por el ESTE, con terrenos del Centro Pesquero; y por el OESTE, con terrenos del U.S.A. Navy.
>
> The Parcel is recorded in the Registry at the page eighty-one (81), volume three hundred thirty-eight (338) of Santurce Sur, property number twenty thousand seven hundred fifty-three (20,753). *Id.* at 20.

31. To further guarantee Loan Agreement II, on September 18, 2007, North Bay executed a *Mortgage Note Pledge and Security Agreement* ("Pledge Agreement I") with Doral, authenticated by affidavit number 1,655 of notary public Ricardo O. Meléndez Saurí. (d.e. 1-15).

32. By virtue of said Pledge Agreement I, North Bay pledged the Mortgage Note II, secured by the Mortgage Deed II. (d.e. 1-15).

33. The lien over the Mortgage Note II, pledged through the Pledge Agreement I, as well as additional collateral, was further perfected in favor of Doral through the filing of a Financing Statement #2007046903 ("Financing Statement II") presented by North Bay at the Commonwealth of Puerto Rico State Department, in accordance with Chapter 9 of the Commercial Transactions Act, authenticated by affidavit number 1,658 of notary public Ricardo O. Meléndez Saurí. (d.e. 1-16).

34. On September 18, 2007, the Guarantors and Doral executed a *Guaranty* (the "Guaranty II") to unconditionally guarantee to Doral the payment of all of North Bay's obligations under the Loan Agreement II. (d.e. 1-17).

35. Guaranty II was authenticated by affidavit number 1,656 of notary public Ricardo O. Meléndez Saurí. (d.e. 1-17).

36. Moreover, on September 18, 2007, OESE Holding, Inc. ("OESE" or the "Investment Pledgor") executed a *Pledge and Security Agreement* (the "Pledge Agreement II") with Doral, pursuant to which OESE pledged and granted a security interest over Account Number 7CC766745 (the "Pledge Account"), established in the name of the Investment Pledgor by Santander Securities Corporation. (d.e. 1-18).

37. Said Pledge Agreement II was authenticated by affidavit number 1,657 of notary public Ricardo O. Meléndez Saurí. (d.e. 1-18).

CIVIL 17-1203CCC                                    8

38. On March 27, 2008, OESE and Doral executed a *First Amendment to Pledge and Security Agreement* (the "Modified Pledge Agreement II") to substitute the Pledge Account. (d.e. 1-19).

39. Accordingly, on March 27, 2008, OESE, Doral, UBS Financial Services Incorporated of Puerto Rico and UBS Financial Services, Inc. executed an *Account Control Agreement* by which Account Number 08541 became the Pledge Account. (d.e. 1-20).

40. The liens granted through the Modified Pledge Agreement II were perfected in favor of Doral through the filing of a Financing Statement (the "Financing Statement III") at the Commonwealth of Puerto Rico State Department, presented for filing by OESE in accordance with Chapter 9 of the Commercial Transactions Act. (d.e. 1-21).

41. On March 4, 2011, North Bay, the Guarantors, and Doral executed a *First Amendment to Loan Agreement* ("Modified Loan Agreement III") to, among other things, extend the maturity date of the obligations under Loan Agreement II until December 31, 2013. (d.e. 1-22 at 1).

42. The Modified Loan Agreement III was authenticated by affidavit number 15,091 of notary public Sergio A. Ramírez de Arellano. *Id.*

43. The modifications made to the Loan Agreement II through the Modified Loan Agreement III were evidenced by a *First Allonge to Promissory Note* (the "Allonge II") issued by North Bay and authenticated by affidavit number 15,092 of notary public Sergio A. Ramírez de Arellano. (d.e. 1-12).

44. On November 29, 2007, Omega Engineering, S.E. –now Omega– executed a loan agreement (the "Loan Agreement III") with Doral, authenticated by affidavit number 2,169 of notary public Rebeca Caquías Mejías. (d.e. 1-23). Certified translation submitted on at docket entry 9-1.

45. Through the Loan Agreement III, Doral provided a revolving credit facility to Omega in the principal amount of $3,000,000.00. (d.e. 9-1).

46. The principal amount of the Loan Agreement III was evidenced by a master promissory note (the "Promissory Note III") in the amount of $3,000,000.00, authenticated by affidavit number 2,168 of notary public Rebeca Caquías Mejías. (d.e. 1-24; certified translation at d.e. 9-2).

47. Promissory Note III was subsequently endorsed in favor of Bautista. (d.e. 1-24; d.e. 9-2).

CIVIL 17-1203CCC                        9

48. To guarantee the Loan Agreement III, on November 29, 2007, the Guarantors executed a guaranty (the "Guaranty III") to jointly and severally guarantee to Doral the payment of all the obligations under Loan Agreement III. Said Guaranty III was authenticated by affidavit number 2,170 of notary public Rebeca Caquías Mejías. (d.e. 1-26; certified translation at d.e. 9-4).

49. On March 4, 2011, Omega, the Guarantors and Doral executed a first amendment to the Loan Agreement III ("Modified Loan Agreement IV"), authenticated by affidavit number 15,086 of notary public Sergio A. Ramírez de Arellano. (d.e. 1-27). Certified translation submitted at docket entry 9-5.

50. Pursuant to said Modified Loan Agreement IV, Omega, among other things, recognized an outstanding debt in the amount of $1,998,725.60 under Loan Agreement III. (d.e. 1-27; d.e. 9-5 at 3).

51. Also, pursuant to the Modified Loan Agreement IV, the parties extended the maturity date of the obligations under Loan Agreement III until December 31, 2013. (d.e. 1-27; d.e. 9-5 at 3).

52. The modifications made to the Loan Agreement III through the Modified Loan Agreement IV were evidenced by an *Allonge* (the "*Allonge* III") issued by Omega and authenticated by affidavit number 15,087 of notary public Sergio A. Ramírez de Arellano. (d.e. 1-25; d.e. 9-3).

53. To further guarantee the obligations under the Loan Agreement III, on March 4, 2011, the Guarantors executed a guaranty (the "Guaranty IV") to jointly and severally guarantee to Doral the payment of all the obligations under Loan Agreement III, as modified by the Modified Loan Agreement IV. (d.e. 1-28). Certified translation submitted at docket entry 9-6.

54. Guaranty IV was authenticated by affidavit number 15,088 of notary public Sergio A. Ramírez de Arellano. (d.e. 1-28; d.e. 9-6).

55. On March 8, 2016, Bautista, through its counsel, sent a *Notice and Declaration of Events of Default* (the "Notice of Default") to defendants through which it notified the events of default under the Credit Facilities that had occurred and were continuing, and declared all amounts owed by defendants under the Credit Facilities as due, payable, and outstanding. (d.e. 1-29).

56. Pursuant to the pertinent sections of the Credit Facilities, Bautista gave defendants a thirty (30) day period to cure the notified defaults, which amounted, at that date, to $16,559,280.41. (d.e. 1-29).

57. To this day, defendants have failed to fulfill their obligations under the Credit Facilities and/or cure the outstanding default. (d.e. 51-1 at ¶¶ 7 and 14).

58. As to Loan Agreement I, Ridgestone and Guarantors owe $1,053,049.72 in principal; $231,283.36 in interest; accruing daily (*per diem*) interest in the amount of $248.63; $3,965.62 in late fees; $180,000.00 in legal expenses; $98,928.17 in default interest; and $345.00 in insurance costs. *Id.* at ¶ 10.

59. As to Loan Agreement II, North Bay and Guarantors owe $13,187,500.00 in principal; $2,069,038.72 in interest; accruing daily (*per diem*) interest in the amount of $2,567.90; $1,318,000.00 in legal expenses; $1,238,892.36 in default interest; $345.00 in insurance costs; and $2,528.50 in valuation expenses. *Id.* at ¶ 11.

60. As to Loan Agreement III, Omega and Guarantors owe $1,548,725.47 in principal; $305,251.89 in interest; accruing daily (*per diem*) interest in the amount of $366.06; $17,256.04 in late fees; $300,000.00 in legal expenses; and $145,494.15 in default interest. *Id.* at ¶ 12.

## III.  STANDARD OF REVIEW

The standard applicable to summary judgment motions was summarized by the Court of Appeals in *Johnson v. University of Puerto Rico*, 714 F.3d 48, 52 (1st Cir. 2013):

> Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Cox v. Hainey*, 391 F.3d 25, 29 (1st Cir. 2004). We look to the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits in making the determination. *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008). A dispute is genuine if "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." *Id.* (quoting *Sánchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996)) (internal quotation mark omitted). A fact is material if it has potential to determine the outcome of the litigation. *Maymí v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008).

Once a properly supported motion has been presented, where a nonmovant bears the burden of proof on an issue, the nonmovant must point to competent evidence and specific facts to defeat summary judgment.

CIVIL 17-1203CCC 11

*Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011).  The evidence proffered must be "significantly probative of specific facts," *Pérez v. Volvo Car Corp.*, 247 F.3d 303, 317 (1st Cir. 2001), and the "mere existence of a scintilla of evidence" in support of the nonmovant's position is insufficient, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**IV. APPLICABLE LAW AND ANALYSIS**

*A. Amount of Debt and Attorney's fees*

Defendants argue that Juan Crespo's unsworn declaration is insufficient to prove the amount of debt they owe Bautista, as Bautista needs to provide statements and business records. (d e. 58 at 5, 8, 10). The Court disagrees with defendant's argument, given that in a motion for summary judgment, Federal Rule of Civil Procedure 56 allows a moving and non-moving party to support factual positions using "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

Moreover, statute 28 U.S.C. § 1746 allows a party to submit an unsworn declaration under penalty of perjury to support or oppose a motion for summary judgment. *See Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit International, Inc.*, 982 F.2d 686, 689-690 (1st Cir. 1993) (under federal law, an unsworn statement signed under penalty of perjury may be used, in lieu of a sworn statement or affidavit, to support or oppose a motion for summary judgment). It is important to note that defendants do not challenge the amount

CIVIL 17-1203CCC                              12

owed stated in the unsworn declaration; they merely object to the type of evidence. Accordingly, this fact is not genuinely in dispute. Therefore, Juan Crespo's unsworn declaration is sufficient to establish the amount of debt owed by defendants, including legal expenses and fees. Additionally, the Court declines to apply the doctrine of moderation to the penal clause regarding the attorney fees. (d.e. 51 at 11).

### B.  *Authority as Attorney-in-Fact*

Under Puerto Rico law, "an express commission is required" to obtain the power to act in representation of another "[i]n order to compromise, alienate, mortgage, or to execute any other act of strict ownership." 31 L.P.R.A. § 4425. *Defendants' Opposition to Plaintiffs Summary Judgment* alleges that Bautista did not prove that Mr. Oscar Rivera had the power to represent Ms. Cristina Soto. Considering all evidence in record, the Court accepts Bautista's Power of Attorney provided in his *Reply To Opposition To Plaintiff's Motion For Summary Judgment And Memorandum Of Law*, which proves that Mr. Oscar Rivera had the power to represent Ms. Cristina Soto. (d.e. 65-3). Accordingly, the fact of Mr. Oscar Rivera's authority is not in dispute.

### C.  *Mortgage perfection*

A mortgage is used to secure a personal obligation, usually a loan. Therefore, a "mortgage contract presupposes the existence of two legal concepts, to wit, a principal obligation and the mortgage itself, which serves as security to the former's creditor." *Liechty v. Descartes*, 9 P.R. Offic. Trans. 660, 668 (1980). Mortgages are perfected when the mortgage note used to secure a loan is recorded in the Puerto Rico Property Registry. 31 L.P.R.A. § 5042; *Dist. Unidos Gas v. Sucn. Declet Jimenez*, 196 D.P.R 86, 113 (2016). If a party fails to record the mortgage note in the Property Registry, the original loan is

CIVIL 17-1203CCC                              13

still valid as personal obligation. *Liechty*, 9 P.R. Offic. Trans. at 666-667. In other words, if the mortgage is not perfected, the original loan is still valid, and creditors can sue for the amount owed of the loan but without the guarantee of the real property as collateral.

In the *Opposing Statement of Material Facts in Support of Opposition to Plaintiff's Motion for Summary Judgment*, defendants allege that Bautista did not provide a record that shows that the Deeds of Mortgages were recorded in the Property Registry, and the therefore Bautista does not have a lien over the real properties. (d.e. 59 at 2, 4). However, Bautista in its *Reply to Opposition to Plaintiff's Motion for Summary Judgment And Memorandum of Law* filed two titles studies showing that the mortgage notes of the real properties of Ridgestone and North Bay were filed in the Property Registry. (d.e. 65-1; d.e. 65-2). Given that Bautista provided the two titles studies, the Court finds there is no genuine dispute of material fact as to whether the mortgages were recorded.

### D.    U.C.C. Filing

Defendants allege that Bautista did not present evidence showing that Ridgestone's financing statement was recorded in the Puerto Rico Department of State, as it did not have a date and time stamp, or a registration number assigned by the Puerto Rico Department of State. (d.e. 59 at 3). As a general rule, to perfect a security interest, a financing statement must be filed. 19 L.P.R.A. § 2260. Filings are made in the Office of the Secretary of State, except those ones identified in sub-parts (1) and (2). 19 L.P.R.A. § 2321. Section 2336 defines filing as "communication of a record to a filing office and tender of the filing fee or acceptance of the record by the filing office." 19 L.P.R.A. § 2336. Bautista has not showed that Ridgestone's financing

CIVIL 17-1203CCC 14

statement has been properly filed in the Office of the Secretary of State, since the financing statement provided in docket entry 1-7 is not stamped with the date and time like the other financing statements attached to the *Complaint*. *See* (d.e. 1-16).

Given that Bautista did not provide a stamped financing statement, whether the financing statement was submitted to the Puerto Rico Department of State is a genuine of a disputed fact. This does not mean that Bautista cannot request the foreclosure of the collateral mentioned in exhibit A of the financing statement issued by Doral and Ridgestone, (d.e. 1-7), since denial does not affect the validity of the security agreement. *See* 19 L.P.R.A. § 2233. The denial only means that the transaction is unsecured.

## V.  CONCLUSION

For the foregoing, the Court **GRANTS** Bautista's *Motion for Summary Judgment* (**d.e. 50**) and **DENIES** summary judgment solely as to declaring the collateral mentioned in Exhibit A of the financing statement issued by Doral and Ridgestone as secured. (d.e. 1-7). Judgment shall be entered by separate order.

SO ORDERED.

At San Juan, Puerto Rico, on September 30, 2019.

S/CARMEN CONSUELO CEREZO
United States District Judge